# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CARL JOHNSON

        Plaintiff,

v.                                                                       Case No.14-C-190

CAROLYN COLVIN,

        Defendant.

## DECISION AND ORDER

Plaintiff filed this action challenging the decision of the Commissioner of Social Security denying her disability benefits. For the reasons given below, the decision of the Commissioner will be affirmed.

**I. Background**

Plaintiff alleged that his disability was the partly result of heart conditions, including congestive heart failure, angina, and arrhythmia, but primarily the result of mental health issues, including anxiety and related post-traumatic stress disorder. He had previously worked as an emergency medical technician, and on one occasion he responded to a grizzly accident involving five fatalities. He reported that this incident required him to pick up body parts, resulting in post-traumatic stress ever since.

Plaintiff received therapy from a licensed social worker and reported some success with an anti-depressant drug, but even so his therapist opined that he would be off-task as much as 30% of a workday and would need to miss work frequently—as much as five times per month. Plaintiff's

family supported his benefits application, testifying that during the twelve years he worked for the family business, he would often need to miss work due to his symptoms or outbursts of anger. (Plaintiff was living with his parents at the time of the hearing, due to a recent divorce.) The ALJ discounted these sources, however, and found a residual functional capacity of medium work, with the restriction of only occasional interaction with co-workers, supervisors and the public. (R. 24.) At the time of the hearing, the Plaintiff had been employed in a half-time capacity as a delivery truck driver for two and one-half years, and the ALJ found that Plaintiff retained the ability to perform that work on a full-time basis.

## II. Analysis

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir.2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007).

**A. Social Worker Opinion**

Plaintiff first argues that the ALJ erred by failing to give sufficient weight to the opinion of Plaintiff's counselor, Debra Mullen. As noted above, Mullen concluded that Plaintiff would be essentially unemployable because he would be off-task some 30% of the day, absent five or more days per month, and would be unable to complete an eight-hour work day five or more days per month. (R. 754.) In addition, she opined that Plaintiff would be "less than 50%" as efficient as an average worker. (R. 755.) Clearly, if these conclusions were accepted, the Plaintiff would not be able to work full-time.

2

The ALJ rejected Mullen's opinions, giving them "no weight." (R. 25.) He first noted that, as a social worker, Mullen was not an acceptable medical source. In addition, the ALJ found that Mullen's conclusions were not supported by the other evidence in the record, including the fact that the Plaintiff had worked the past two years and missed only five days during that entire period—much less than the five-plus days per *month* Mullen suggested.

Plaintiff argues that the ALJ summarily dismissed Mullen's opinion, in violation of SSR-06-3p, which notes that even non-acceptable medical sources (nurse practitioners, social workers, etc.) are to be deemed "important" and should be evaluated. The Plaintiff places too much weight on the regulations he cites, however. Importantly, SSR 06-3p states that ALJs "may" use evidence from "other sources," including social workers, and that information "may" provide insight as to the severity of the impairment. SSR 06-3p at 2-3. *Pierce v. Colvin,* 739 F.3d 1046, 1051 (7th Cir. 2014) (noting that an "ALJ may consider" a non-acceptable medical source's opinions, "but the weight they will be given will depend on a number of factors, including the degree to which they are supported by objective evidence.") The fact that an ALJ is allowed to consider such opinions does not necessarily mean that he is required to.

Regardless, the ALJ *did* consider the opinion and rejected it for very sound reasons, and not merely because Mullen was not an acceptable medical source under the regulations. As the ALJ noted, Mullen's opinion seemed to ignore the very telling fact that the Plaintiff had worked for two years without missing many days at all. The cases Plaintiff cites in support of his argument all involve situations in which the ALJ simply ignored or failed to discuss an "other" medical source. In *Dogan v. Astrue,* for example, the ALJ erred because he appeared to reject out-of-hand the opinion of a nurse practitioner simply *because* she was a non-acceptable treating source. In other

3

words, the ALJ in that case appeared to believe that because the source was not "acceptable," it was *ipso facto* entitled to no weight. 751 F. Supp.2d 1029, 1038 (N. D. Ind. 2010) ("The ALJ's misinterpretation of SSR 06–3p and his resultant failure to properly analyze or consider Bucholz's opinion constitutes grounds for remand.") And in *Smith v. Commissioner,* the ALJ did not "even mention, let alone consider and weigh, the opinion of treating chiropractor Dr. Kolanko." 2010 WL 1838366, *11 (N. D. Ind., May 6, 2010).

Here, by contrast, the ALJ devoted an entire paragraph to describing Mullen's opinions and conclusions and then explaining why he was rejecting them. First, they were contradicted by the actual factual circumstances, namely the fact that Plaintiff had only missed five days in two years of work, and they were also contradicted by Plaintiff's other activities. In evaluating a non-acceptable medical source opinion, this is all the ALJ is required to do.

Plaintiff takes issue with the ALJ's rationale, noting that the Plaintiff was only working four hours per day, which made the job more tolerable for him. But if someone has a 98% attendance record at a four-hour-per-day job, one would not expect (without a good explanation) that attendance would drop as severely as Mullen opined simply by virtue of having to work an eight-hour day. Nor is there any explanation for why Plaintiff would be "off-task" a full fifty percent of the time. If that were true, one would not expect him to be employable presently, and yet he held a job for the last two and one-half years. Plaintiff testified that his limitations were mental ones, largely related to flashbacks, stress and anxiety from PTSD. (R. 88.) Neither Mullen nor the Plaintiff ever satisfactorily explained why someone with those kinds of issues would be able to have nearly perfect attendance while working half-time, but would suddenly become completely unemployable if he had to work full-time. It is indeed a contradiction, as the ALJ noted. The

4

Plaintiff's explanation for the discrepancy was vague and unconvincing. He merely testified that in working four hours per day, "I can handle the stress of everything going on." (R. 92.) The Plaintiff then explained that "back when I was working for my father though [presumably full-time] I was missing probably, out of a five day period, I'd miss three days, two to three days." (*Id.*)

The vague reference to being able to handle stress is not enough to overcome the contradiction the ALJ noted. Plaintiff testified that his current job involved driving a delivery truck for St. Vincent de Paul, but he did not elaborate on what kinds of stresses would allow him to perform that job so consistently for up to 22 hours per week but then render him unable to perform it at 40 hours per week. His supervisor noted that coworkers had complained about Plaintiff's focus on what was happening in his personal life, which impacted his productivity on some occasions. (R. 294.) He also had issues with anger management. But the supervisor noted that Plaintiff was an important part of their staff and was usually in a good mood. Thus, although Plaintiff clearly had some difficulties due to his PTSD and / or anxiety, nothing in the records supports the idea that he would be absent nearly every week, always be off-task thirty percent of the time or that he would be fifty-percent less productive than a typical worker. In sum, while it is certainly conceivable that an individual might experience significantly more limitations during an eight-hour day than a four-hour day, the ALJ was not required to make that unsupported leap of logic based solely on the opinion of a non-acceptable medical source and the vague testimony of the claimant.

**B. Development of the Medical Record**

The Plaintiff next argues that the ALJ erred by failing to develop the record, for example, by ordering a consultative examination. Plaintiff notes that there were no medical sources in the record (apart from the social worker), and so the ALJ's conclusion that he was not disabled must

5

have resulted from the ALJ "playing doctor" himself.

It is true that Social Security hearings are inquisitional rather than adversarial, which means the ALJ is under some obligation to get to the truth without respect to what the claimant himself might provide in the way of evidence. But courts repeatedly emphasize that there is a great degree of deference on this question, and courts will not second-guess an ALJ's implicit conclusion that the record is sufficient as it stands. *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009); *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994). Moreover, the duty to independently develop the record is usually only raised in *pro se* cases. Here, Plaintiff was represented at the hearing by the same counsel he is currently represented by, and so it is somewhat awkward to for him to fault the ALJ for the alleged lack of medical evidence in the record. "[T]he need for additional tests or examinations will normally involve a question of judgment, and we generally defer to the ALJ's determination whether the record before her has been adequately developed. Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence indicating that further development is required." *Wilcox v. Astrue,* 492 Fed.Appx. 674, 678, 2012 WL 3590894, *3 (7th Cir. 2012) (citing *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997) ("when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.")). Here, the Plaintiff does not allege that his counsel requested a consultative exam or identified any gaps in the record. The time for doing so would have been prior to, or at least during, the hearing. Given these circumstances, a court should defer to the agency's conclusion that the record was sufficient.

In addition, it should be clear that the absence of medical evidence did not mean the ALJ played doctor, which is a shorthand way of saying the ALJ substituted his own medical opinions for those in the record. The ALJ's job is not to make medical diagnoses, it is to review evidence with an eye to determining what kinds of work, if any, the claimant can perform. Here, the ALJ made detailed findings about the Plaintiff's abilities, which is the essence of any ALJ's job. The ALJ was most persuaded by Plaintiff's reports about his current activities, which included hunting and fishing, as well as lifting up to 45 pounds. (R. 25.) It appears the most persuasive factor was Plaintiff's part-time job, as described above. The ALJ recognized that during stressful periods the Plaintiff would have limitations, but he noted that Plaintiff's supervisor reported that he was usually in a good mood. (*Id.*) The ALJ also noted that the state agency physician conducted a mental RFC assessment and found only minimal or moderate limitations. These conclusions were all well within the ALJ's role, and none of them required him to render his own medical opinions.[1]

**C. Heart Condition**

Finally, Plaintiff asserts that the ALJ erred by failing to evaluate the Plaintiff's heart condition as a non-severe impairment. The ALJ found:

> He has been diagnosed with congestive heart failure and atrial fibrillation and has experienced episodes of arrhythmia. The claimant underwent cardioversion and ablation procedures. Subsequent to these procedures, the claimant appears to have done well as he reported in August 2012 . . . The claimant testified at the disability

---

[1] The ALJ did make a comment that arguably involved "playing doctor," but it was not material. The ALJ said: "Interestingly, although the claimant has been diagnosed with PTSD, which is an anxiety disorder, he is treated with Zoloft, which is an antidepressant." (R. 25.) According to the National Center for PTSD, Zoloft has been FDA-approved for the treatment of PTSD for fifteen years, and in fact it is one of a very few drugs actually approved for treatment of PTSD. Matt Jeffreys, MD, "Clinician's Guide to Medications for PTSD," http://www.ptsd.va.gov/professional/treatment/overview/clinicians-guide-to-medications-for-ptsd.asp (last visited December 22, 2014).

hearing that his heart is fine but he experiences fatigue, decreased stamina, and difficulty lifting. . . . Further, the claimant has undergone a number of echocardiograms that have revealed normal heart function and normal ejection fraction.

(R. 23.)

Plaintiff argues that the regulations require an ALJ to assess the combined effect of all of a claimant's impairments, even if the impairments are not severe. Strangely, the Plaintiff relies on a Seventh Circuit case *affirming* the denial of benefits when the ALJ concluded that a Plaintiff's non-severe depression did not materially impact her ability to work. *Denton v. Astrue,* 596 F.3d 419, 423-24 (7th Cir. 2010).[2]

In any event, the government does not dispute that an ALJ is obligated to consider limitations stemming from non-severe limitations. In *Alesia v. Astrue,* for example, the ALJ concluded that the Plaintiff's non-severe depression caused mild limitations in social functioning and daily living. 789 F.Supp.2d 921, 933 (N.D.Ill. 2011). Even so, the ALJ did not incorporate those limitations into the RFC calculation, and the district court reversed on that basis.

Here, by contrast, the ALJ did not find *any* limitations resulting from the heart condition Plaintiff experienced in 2010 and 2011. As recounted earlier, the ALJ considered the heart issues and found that they had ameliorated significantly after treatment. Even now, the Plaintiff concedes the fact that "the medical record shows significant improvement in his heart condition." (ECF No. 13 at 25.) Thus, this is not a case where an ALJ found limitations due to a non-severe condition and then failed to incorporate those into the RFC. Instead, this is a case where the ALJ did *not* find any

---

[2]The Plaintiff's brief mischaracterizes the holding of that court as a "remand," when in fact the court of appeals affirmed the district court's own ruling affirming the denial of benefits. (ECF No. 13 at 25.)

8

limitations at all, and as such it was perfectly sensible to leave the heart conditions out of the RFC entirely.

**III. Conclusion**

For the reasons given above, the decision of the Commissioner is affirmed.

**SO ORDERED** this 22nd day of December, 2014.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court